# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ROBIN L. ROSENQUIST,               :

       Plaintiff,                                   Case No. 3:11-cv-447

   -vs-                                              District Judge Thomas M. Rose
                                                    Magistrate Judge Michael R. Merz
MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.           :

## REPORT AND RECOMMENDATIONS

      Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

      Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).

1

Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With

respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to

the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on October 7, 2008, alleging disability from February 1, 2004, due to neuropathy, lap band complications, diabetic retinopathy, and diabetes. PageID 242-45; 239-41; 282. The Commissioner denied Plaintiff's applications initially and on reconsideration. PageID 149-50; 151-53;159-61. Administrative Law Judge Eve Godfrey held a hearing, (PageID 70-142), and subsequently determined that Plaintiff is not disabled. PageID 44-69. The Appeals Council denied Plaintiff's request for review, (PageID 40-42), and Judge Godfrey's decision became the Commissioner's final decision. See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled, Judge Godfrey found that she has severe shoulder tendonitis, diabetes mellitus neuropathy, mild degenerative joint disease, obesity, and depression, but that she does not have an impairment or combination of impairments that meets or equals the Listings. PageID 49, ¶ 3; 50, ¶ 4. Judge Godfrey also found that Plaintiff has the residual functional capacity to perform a limited range of sedentary work. PageID 51, ¶ 5. Judge Godfrey then used sections 201.28 and 201.21 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. PageID 60, ¶ 10. Judge Godfrey concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. PageID 61.

As an initial matter, the Court notes that in her Statement of Specific Errors, Plaintiff concedes, that with the exception of the reports of the health care practitioners who evaluated her condition at the Commissioner's request, "there is a void of medical documentation regarding

4

[her] health conditions up until approximately June, 2010". PageID 954. However, the record contains numerous emergency department and hospital outpatient treatment notes dated during the period January, 2004, through August, 2008, which reflect that during that time, Plaintiff received treatment for various complaints and medical conditions including otitis media, dizziness, upper respiratory tract infection, new onset diabetes, bronchitis, vaginal yeast infection, diabetic neuropathy, poorly controlled diabetes, infected blister right foot, scabies, excisional biopsy of right breast mass, generalized myalgias, morbid obesity treated with laparoscopic adjustable banding, cellulitis right third toe, abnormal uterine bleeding, intractable nausea and vomiting attributed to suspected slipped gastric band treated with diagnostic laparoscopy with lysis of adhesions and removal of gastric band, hemorrhagic gastritis, presbyesophagus, and a sliding hiatal hernia. PageID 374-573. Additional outpatient treatment notes dated through October, 2008, reveal that Plaintiff had a second laparoscopic gastric band inserted in September, 2008 with satisfactory postoperative appearance. PageID 689-91.

Examining psychologist Dr. Chaffins noted on December 22, 2008, that Plaintiff reported that she had been diagnosed with depression on and off over the last several years and that she had never had mental health therapy nor ever seen a psychiatrist. PageID 702-08. Dr. Chaffins also noted that Plaintiff was very verbose, went off on a tangent several times, was circumstantial at times, had taken psychotropic medications in the past but stopped taking them due to side effects, graduated from high school and earned an LPN degree, lost her nursing license after she was convicted of a felony due to someone who was living in her house selling drugs, and that she had earned an associate degree in medical office management. *Id.* Dr. Chaffins reported that Plaintiff presented as somewhat depressed, had rapid and rambling speech, seemed somewhat dramatic,

5

was alert and oriented, appeared to be functioning in the average range of intelligence, and appeared to have fair insight and judgment. *Id.* Dr. Chaffins also reported that Plaintiff's diagnosis was major depressive disorder, recurrent, moderate severity. He assigned Plaintiff a GAF of 60. *Id.* Dr. Chaffins opined that Plaintiff's abilities to relate to others and to withstand the stress and pressures associated with day-to-day work activity were mildly impaired and her abilities to understand and follow instructions and to maintain attention to perform simple repetitive tasks were not impaired. *Id.*

Examining physician Dr. Vitols reported on June 29, 2009, that Plaintiff was sixty-five inches tall and weighed 237 pounds, had a tandem gait, painful restricted motion within the right shoulder and some relative loss of strength with no motor deficit, triggering in both third digits right and left, and that she had generalized tenderness in the metacarpophalangeal joints right and left. PageID 724-31. Dr. Vitols also reported that Plaintiff complained of tenderness upon palpation of the lumbosacral junction, her ranges of motion were restricted, she had difficulty performing heel and toe standing, straight leg raising was negative, and there was decreased sensation of both lower extremities starting at the mid-calf level. *Id.* Dr. Vitols deferred xrays of Plaintiff's lumbar spine due to possible pregnancy.[1] Dr. Vitols identified Plaintiff's diagnoses as chronic lumbosacral sprain and strain, triggering of the third digit right and left, exogenous obesity, diabetes per history, probable diabetic neuropathy, and rotator cuff syndrome of the right shoulder. *Id.* Dr. Vitols opined that Plaintiff had limited use of her right upper extremity especially at or above shoulder height on a regular basis, had an impaired ability to grasp and manipulate on a

---

1 The Court notes that although Dr. Vitols reported that xrays of Plaintiff's lumbar spine were deferred due to possible pregnancy, his invoice includes a charge for "AP lateral lumbar spine (cone down lateral L-S junction)—3 views" and a charge for "AP lateral lumbar spine (cone down lateral L-S junction)—3 views interp". PageID 732. However, consistent with Dr. Vitol's statement that lumbar spine xrays were deferred, his report does not include a report interpreting any xrays.

regular basis, and that her ability to stand and walk and bend and twist at her waist were affected by her physical condition. *Id.*

Dr. Chaffins again examined Plaintiff on July 13, 2009, and reported that Plaintiff graduated from high school, received an associate degree in medical office management, was an LPN but lost her license due to having a felony conviction which arose from someone selling drugs in her house, her affect was flat, her mood seemed depressed, and that she was cooperative. PageID 733-37. Dr. Chaffins also reported that Plaintiff was alert and oriented, her rate of speech was within normal limits, she appeared to be functioning approximately in the average range of intellectual abilities, appeared to have fair insight and judgment, and that her most serious symptoms were those of depression, anxiety, and anger. *Id.* Dr. Chaffins identified Plaintiff's diagnosis as major depressive disorder, recurrent, and of moderate severity and she assigned Plaintiff a GAF of 51. *Id.* Dr. Chaffins opined that Plaintiff's ability to relate to others was mildly impaired and her abilities to understand and follow instructions, to maintain attention to perform simple repetitive tasks, and to withstand the stress and pressures associated with day-to-day work activity were moderately impaired. *Id.*

In July, 2010, Plaintiff's ophthalmologist at Retina Physicians and Surgeons reported that Plaintiff's examination revealed that she had bilateral proliferative diabetic retinopathy. PageID 768-71. Plaintiff subsequently underwent bilateral laser photocoagulation. *Id.*

The record contains a copy of Plaintiff clinical notes from the Dayton Pain Center dated July through March, 2011. PageID 785-827; 924-40. Plaintiff received treatment from the physicians at that facility for complaints of low back pain radiating to her legs and bilateral shoulder pain. *Id.* When Dr. Mathai evaluated Plaintiff, he noted that she had a broad based gait,

7

restricted shoulder motion with tenderness bilaterally, and painful and restricted back ranges of motion with tenderness. *Id.* Dr. Mathai reported on July 25, 2010, that Plaintiff's xrays revealed mild disc space narrowing and moderate osteophyte formation in the mid and lower thoracic area, minimal arthritic changes of the cervical spine, and slight anterior subluxation of L5 on S1. *Id.* Dr. Mathai also reported that Plaintiff was obese, had decreased ranges of motion of the lumbar spine, decreased strength on the right side, tenderness of the right and left shoulders, hyperpathia of the fingers, and that she had absent sensation on the right leg up to thigh area and on the left side up to the knee. *Id.* Dr. Mathai identified Plaintiff's diagnoses as lumbago probably due to anterolistheals and spondylosis, bilateral adhesive capsulitis, a lump on the sacral area, and peripheral neuropathy. *Id.*

Left shoulder xrays performed on July 30, 2010, revealed an old ununited mid-clavicular fracture on the left and small marginal osteophytes suggesting mild osteoarthritis at the left glenohumeral articulation. *Id.* Right shoulder xrays also performed on July 30, 2010, revealed calcific tendonitis of the distal supraspinatus tendon and small marginal osteophytes along the inferior aspect of the glenoid suggesting very mild osteoarthritis at the glenohumeral articulation. *Id.* July 30, 2010, xrays of Plaintiff's hips were normal and on that same date xrays of Plaintiff's pelvis revealed osteopenia. *Id.*

An MRI of Plaintiff's sacrum performed on July 30, 2010, revealed bilateral L5 pars defects with an anterolisthesis of L5 on S1 and moderate degenerative changes at L5-S1 and normal sacroiliac joints. *Id*.

A lumbar spine MRI performed on September 3, 2010, revealed Grade I spondylolisthesis with secondary severe foraminal stenosis at L5-S1, a potential explanation for bilateral lower

extremity radiculopathy, and no acute findings. *Id.* A cervical spine MRI performed on September 3, 2010, revealed mild degerative changes in the lower cervical spine particularly at C6-7 resulting in mild central canal and foraminal stenosis, degenerative features in the discs and facets which could be an explanation for neck pain, and no acute findings. *Id.*

A September 20, 2010, EMG and nerve conduction study of Plaintiff's upper extremities revealed evidence of a generalized peripheral sensoriomotor polyneuropathy which was quite severe and no definite evidence of a cervical radiculopathy, myopathy, or any other entrapment neuropathy. *Id*. On September 27, 2010, an EMG and nerve conduction study of Plaintiff's lower extremities revealed evidence of a fairly severe generalized peripheral sensoriomotor polyneuropathy with superimposed chronic radiculopathy predominantly at L4, L5, and S1. *Id.*

On October 22, 2010, Dr. Reddy of the Pain Center reported that Plaintiff had intractable bilateral lower extremity pain below the knees to her feet as well as bilateral numbness in both hands, lumbar spondylosis, diabetes, and diabetic retinopathy, and that a recent EMG was consistent with the involvement of the generalized peripheral sensory motor neuropathy superimposed on chronic lumbar radiculopathy of L4 and L5 as well as S1. *Id.* Dr. Reddy also reported that Plaintiff's further testing revealed involvement of the small fibers in both lower extremities and both hands, and that she was current being followed by Dr. Mathai who was prescribing medications. *Id.*

The record contains Plaintiff's treatment notes from Wilson Memorial Hospital outpatient facility dated June 29, through October 27, 2010. PageID 849-88. Those notes reveal that Plaintiff received treatment from Dr. Prattipati at that facility primarily for diabetes although over time Dr. Prattipati also noted that Plaintiff had diabetic neuropathy, depression and anxiety, and otitis

9

media. *Id.*

Plaintiff participated in physical therapy at Wilson Memorial Hospital during the period August 10 through December 23, 2010, and the notes from that facility reveal that Plaintiff received therapy for complaints of shoulder and back pain. PageID 896-904.

Plaintiff underwent a functional capacity evaluation at Upper Valley Medical Center Work F.O.R.C.E. on April 14, 2011. PageID 941-49. At the completion of the evaluation, the evaluating therapists reported they were not recommending that Plaintiff participate in a work conditioning or work hardening program secondary to her functional deficits. *Id.* The therapists also reported that Plaintiff had specialized training as a secretarial specialist as well as a pharmacy technician, she had previously participated in physical therapy for shoulder pain but said it "was no help", currently had constant pain in both arms and her lower back, bilateral leg pain, involuntary finger movements, and that it was difficult for her to stay awake secondary to the amount of medication she was taking. *Id.* The therapists noted that Plaintiff's effort was fair during the evaluation, her functional performance was limited by pain complaints and demonstrated deficits, and that the results of the evaluation put her in the sedentary category of work. *Id.*

The medical advisor (MA) testified at the hearing that Plaintiff did not meet or equal the Listings and that she should avoid overhead work as well as work that involved ropes, ladders, scaffolds, hazardous machinery, heights, kneeling, stooping, and crawling. PageID 89-113; 115-18. The MA also testified that Plaintiff should avoid lifting more than ten to fifteen pounds above the shoulder. *Id.*

Plaintiff alleges in her Statement of Specific Errors that the Commissioner erred by failing

to find that she satisfies Listings 1.02B, 1.04C, 11.08, 11.13[2], 12.04, and 12.06. (Doc. 15). Plaintiff's position is that there is "a lack of substantial evidence that Plaintiff did not meet or equal" these Listings. PageID 957; 960; 962; 964; 965.

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing). It is not sufficient to come close to meeting the requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

As an initial matter, the Court makes two observations. First, as noted above, Plaintiff concedes that with the exception of the reports of the health care practitioners who evaluated her condition at the Commissioner's request, there is a void of medical documentation regarding her health conditions until approximately June, 2010. Second, Plaintiff's basic argument that there is a lack of substantial evidence that Plaintiff did not meet or equal these Listings indicates a misunderstanding of the burden of proof in this matter. Plaintiff's argument suggests that it is the Commissioner's burden to establish that Plaintiff does *not* satisfy the Listings. However, *Yuckert* stands for the proposition that it is *Plaintiff's* burden to establish that she *does* satisfy the Listings.

As noted, Plaintiff argues that the Commissioner erred by failing to find that she satisfies

---

2 Although Plaintiff cites to Listing 11.13, that Listing refers to muscular dystrophy. 20 C.F.R. Pt 404, Subpt. P., App. 1 § 11.13. Later in her Statement, Plaintiff describes Listing 11.13 as referring to "peripheral neuropathies". PageID 964. However, it is Listing 11.14 that references peripheral neuropathies.

11

Listings 1.02B (Major Dysfunction of a Joint), 1.04C (Disorders of the Spine), 11.08 (Neurological/Disorganization of Motor Function, Spinal Court or Nerve Root Lesion), and [11.14] (Peripheral Neuropathies).

First, the Court notes that Plaintiff has not pointed to any medical evidence which establishes that she satisfies Listings 1.02B, 1.04C, 11.08, and/or [11.14]. That is, not one medical expert has opined that Plaintiff satisfies the Listings. Rather, the MA specifically testified that Plaintiff *does not* meet or equal the Listings. In addition, reviewing physician Dr. Villanueva opined that Plaintiff has the residual functional capacity to perform a range of light work. PageID 757-64.

In the absence of any medical evidence that Plaintiff satisfies the Listings related to exertional impairments, the Commissioner did not err by failing to find that she did satisfy them.

Plaintiff also argues that the Commissioner erred by failing to find that she satisfies Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders). However, for the same reasons that the Commissioner did not err by failing to find that Plaintiff does not satisfy the exertional Listings discussed above, the Commissioner did not err by failing to find that Plaintiff satisfies the Listings related to mental impairments.

First, no mental health expert has opined that Plaintiff satisfies the Listings. Specifically, examining psychologist Dr. Chaffins opined that Plaintiff is, at worst, moderately impaired in her abilities to perform some work-related mental activities. In addition, reviewing psychologist Dr. Waddell opined that Plaintiff does not have a severe impairment, (PageID 709-22), and reviewing psychologist Dr. Casterline opined that Plaintiff is, at worst, moderately impaired in her abilities to perform some work-related mental activities. PageID 739-56.

In the absence of any medical evidence that Plaintiff satisfies the nonexertional Listings, the Commissioner did not err by failing to find that she satisfies them.

Plaintiff suggests in her Statement of Errors that the record contains evidence which supports her position that she is disabled. However, the question before the Court is not whether there is substantial evidence to support Plaintiff's position, but rather, if the Commissioner's decision is supported by substantial evidence. For the foregoing reasons, the Court concludes that it is.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

October 1, 2012                                            s/ *Michael R. Merz*
                                                         United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).